# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v LUCYNSKI

Docket No. 162833. Argued April 26, 2022 (Calendar No. 2). Decided July 26, 2022.

David A. Lucynski was charged in the 71B District Court with operating a vehicle while intoxicated (OWI), MCL 257.625(9)(c); driving with a suspended license, MCL 257.904(3)(b); and operating a vehicle with an open container of alcohol in the vehicle, MCL 257.624a(1). On a January morning, Tuscola County Sheriff's Deputy Ryan Robinson observed two cars stopped in the middle of the road; the vehicles were facing opposite directions with the drivers' windows next to one another, and the drivers appeared to be talking to one another with their windows down. One of the vehicles was defendant's car. Robinson testified at the preliminary examination that he believed that the vehicles were impeding traffic in violation of MCL 257.676b, even though there were no other vehicles on the road at the time. Robinson also testified that he thought a drug transaction might have occurred. Robinson followed defendant in a marked patrol vehicle and turned onto the same one-lane driveway that defendant had entered, parking a few feet behind defendant's car and blocking the only path of egress. Neither the siren nor the emergency lights on Robinson's vehicle were activated. When Robinson exited his patrol car, defendant was standing next to the driver's side door of his car, facing Robinson. Robinson immediately asked whether defendant lived there, and defendant responded that it was a friend's house as he walked toward the deputy. Robinson asked defendant if defendant had his driver's license, to which defendant replied in the negative; upon Robinson's further questioning, defendant responded that he did not have a valid driver's license. Robinson testified that because he smelled the odor of marijuana and alcohol emanating from defendant and noticed that defendant's eyes were bloodshot, he proceeded to investigate whether defendant was intoxicated. Defendant admitted to smoking marijuana about 20 minutes earlier and to consuming alcohol during the day. Defendant then consented to a search of his vehicle, and Robinson found both marijuana and an open container of alcohol inside. Robinson performed several field-sobriety tests, and defendant was arrested. At the preliminary examination, defendant's attorney asked to submit briefing to challenge the validity of the stop under MCL 257.676b and to argue that the evidence obtained by the police should be excluded. The district court, Jason E. Bitzer, J., allowed briefing and later held that the prosecution failed to prove that Robinson had sufficient cause to initiate the stop. The court held that MCL 257.676b(1) could not be violated without a showing that traffic was actually impeded in some way. Accordingly, the court held that all evidence obtained from the stop would be inadmissible in any proceeding moving forward, and it dismissed the OWI charge. The prosecution sought leave to appeal in the Tuscola Circuit Court, and the court, Amy Gierhart, J.,

denied the application. The prosecution then sought leave to appeal in the Court of Appeals, and the Court of Appeals granted the application, limiting the issues to those raised in the application. Despite this, the Court of Appeals resolved the appeal based on a legal theory that the parties had not raised in the trial court or on appeal: whether defendant had been seized at all. In an unpublished per curiam opinion issued December 17, 2020 (Docket No. 353646), the Court of Appeals, LETICA, P.J., and RIORDAN and CAMERON, JJ., held that based on the totality of the circumstances, the earliest point at which the encounter with Robinson could have become a seizure implicating the Fourth Amendment was when defendant admitted to not having a valid driver's license, because that was the earliest point at which a reasonable person would not have felt free to leave. Subsequent investigation into and arrest for suspicion of OWI was deemed justifiable because defendant had been seen driving and the deputy had observed signs of possible intoxication. The Court held that even if MCL 257.676b(1) required actual impediment of traffic, under *People v Salters*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2001 (Docket No. 215396), the evidence should not have been suppressed because a traffic stop would have been based on Robinson's reasonable mistake of law. Accordingly, the Court of Appeals held that the district court abused its discretion when it held that the Fourth Amendment was violated and thus that the district court erred by excluding evidence from the seizure and by dismissing the OWI charge. Defendant sought leave to appeal in the Supreme Court, and the Supreme Court granted the application, limited to three issues: (1) whether Robinson seized defendant when Robinson pulled his patrol vehicle behind defendant's vehicle in the driveway; (2) whether defendant impeded traffic in violation of MCL 257.676b(1) when there was no actual traffic to impede at that time; and (3) if not, whether Robinson made a reasonable mistake of law by effectuating a traffic stop of defendant for violating MCL 257.676b(1). 508 Mich 947 (2021).

In an opinion by Justice WELCH, joined by Chief Justice MCCORMACK and Justices BERNSTEIN, CLEMENT (as to Parts I, II(A), and II(B)), and CAVANAGH, the Supreme Court *held*:

Defendant was seized under the Fourth Amendment when a police officer blocked the driveway and defendant's path of egress with a marked patrol car because, under the totality of the circumstances, a reasonable person would not have felt free to leave or to terminate the interaction; the impeding-traffic statute, MCL 257.676b(1), is only violated if the normal flow of traffic has actually been disrupted; and no reasonable mistake of law occurred because the police officer's mistaken reading of MCL 257.676b(1), an unambiguous statute, was not objectively reasonable.

1. The Fourth Amendment of the United States Constitution protects individuals from being subjected to unreasonable searches and seizures. A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that they were not free to leave. While police officers generally need a warrant to search or seize someone, there are recognized exceptions to this general rule, such as an investigatory stop. A brief seizure for investigative purposes does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. In this case, Robinson did not initiate a formal traffic stop for a violation of MCL 257.676b(1), despite his testimony that this was his intention when he began following defendant. Robinson pulled onto the driveway behind defendant, parked a few feet behind defendant, and blocked the exit. Robinson did not turn his emergency lights on, sound his siren, or direct defendant to pull over on the side of the road. What was not clear under the facts of this case was whether defendant had an independent desire to keep moving. The driveway and home belonged

to his friend. The record was silent on whether defendant was planning to visit with his friend before Robinson began following defendant or whether defendant was planning to keep driving. However, under either of these hypothetical scenarios, defendant was seized. Defendant was seized at the moment Robinson, in his marked police vehicle, blocked defendant's car, resulting in no means for defendant to exit the single-lane driveway. Using a marked police vehicle to block a civilian vehicle's ability to exit a single-lane driveway to facilitate questioning or an investigation is a show of force on behalf of the police that can give rise to a seizure within the meaning of the Fourth Amendment. Under the circumstances of this case—including the rural setting, the way the encounter was initiated by the officer swiftly following defendant down a private driveway, and the fact that the officer's police vehicle blocked defendant's car in the driveway—a reasonable person would not have felt free to leave the scene, even though the police officer did not activate emergency lights or a siren. The same facts would cause a reasonable person to feel compelled to answer questions posed by the officer who had followed him and blocked his path of egress from the driveway of a home he did not own. If a reasonable person in defendant's place did not have an independent desire to leave, but nevertheless did not want to interact with Robinson, the other options available to them would have been to attempt to enter a home that they did not own (and without knowledge whether the owner was home) or wander off into a frozen field some distance from town in a rural area. Neither would have been a viable option from the perspective of a reasonable person after having been followed and then blocked in by a police officer. Accordingly, the Court of Appeals erred by holding that defendant was not seized until after he had made incriminating statements about not having a valid driver's license.

2. MCL 257.676b(1) provides, in relevant part, that a person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular, streetcar, or pedestrian traffic upon a public street or highway in this state by means of a barricade, object, or device or with his or her person. The parties did not dispute that defendant could be a "person" and his vehicle an "object" under MCL 257.676b(1); therefore, it was assumed without deciding that MCL 257.676b(1) applies to a person operating a vehicle on a roadway. The clear terms of MCL 257.676b(1) require some evidence that the accused's conduct actually affected the usual smooth, uninterrupted movement or progress of the normal flow of traffic on the roadway, which requires an assessment of traffic at the time of the alleged offense. MCL 257.676b(1) is not violated if the normal flow of traffic was never impeded, blocked, or interfered with. The potential interference with hypothetical or nonexistent traffic is not sufficient because this interpretation ignores the phrase "normal flow of . . . traffic" in MCL 257.676b(1) and would lead to the untenable situation in which every person crossing a street and every vehicle attempting to park along the side of a road would potentially be guilty of a civil infraction even if no other vehicles or pedestrians were present on the roadway. In this case, the prosecution did not introduce evidence sufficient to establish even reasonable suspicion to believe that defendant violated MCL 257.676b(1) because the normal flow of vehicular traffic on the road was not impeded or disrupted. It was undisputed that no vehicles other than Robinson's, defendant's, and a third unidentified driver's were on the road during the relevant time period. Robinson admitted that he did not have to slow his car down or go around either vehicle. Accordingly, there was no evidence in the record to sustain the accusation that defendant violated MCL 257.676b(1).

3. The Fourth Amendment is not violated if a police officer's suspicion that the defendant's conduct was illegal is based on an objectively reasonable mistake about what the law required. The subjective understanding of the particular officer involved is not examined. Objectively

reasonable mistakes of law occur in exceedingly rare circumstances in which an officer must interpret an ambiguous statute. Additionally, while qualified immunity applies to officers so long as they have not violated a clearly established statutory right, the mistake-of-law doctrine is not as forgiving. In this case, to the extent that Robinson's seizure of defendant was based on a belief that MCL 257.676b(1) was violated, Robinson's mistake of law was not objectively reasonable. One cannot be guilty of violating MCL 257.676b(1) without evidence that the normal flow of actual traffic was disrupted, and Robinson admitted that no disruption had occurred. The Court of Appeals' reliance on *Salters* was not persuasive. In *Salters*, the Court of Appeals based its holding entirely on the perceived purpose of MCL 257.676b(1) instead of also engaging with the text of the statute; the Court of Appeals in this case made the same error by failing to independently analyze MCL 257.676b(1). Additionally, *Salters* had not been cited or relied on for its conclusory interpretation of MCL 257.676b in any appellate decision in Michigan until the Court of Appeals' decision in this case. A single unpublished decision coming out the other way does not transform an unambiguous statute into an ambiguous one.

4. Given that defendant was seized the moment Robinson blocked the driveway and prevented egress, defendant's incriminating statements and the officer's visual and olfactory observations that the Court of Appeals relied upon to justify further inquiry and an eventual arrest were obtained in violation of defendant's Fourth Amendment rights. Prior to Robinson blocking defendant in, defendant had not made any incriminating statements, and thus such statements could not have justified a seizure. A suspected violation of MCL 257.676b(1) also could not serve as reasonable suspicion. Accordingly, there was no lawful justification for the seizure, and the district court did not err by holding that the seizure violated defendant's constitutional rights.

Reversed and remanded to the Court of Appeals to determine whether application of the exclusionary rule was the appropriate remedy for the violation of defendant's Fourth Amendment rights.

Justice CLEMENT, concurring in part and dissenting in part, joined the majority opinion as to Parts I, II(A), and II(B), because she agreed that the traffic stop constituted a seizure under the Fourth Amendment and that this seizure was not justified by reasonable suspicion of criminal wrongdoing. However, Justice CLEMENT joined the dissent as to its Part II because she believed that the evidence should not have been excluded given that the unconstitutional seizure was a result of Robinson's reasonable mistake of law.

Justice ZAHRA, joined by Justice VIVIANO (and by Justice CLEMENT as to Part II), dissenting, would have held that Robinson did not stop or in any way seize defendant when he pulled his patrol car into the driveway behind defendant's parked car and that because there was no seizure, this case did not require interpretation of MCL 257.676b(1). Parking cars one after another is typically the way a driveway functions; there is nothing inherently coercive about a police officer parking behind another car in a driveway. An objectively reasonable person would not have felt obligated to talk to Robinson simply because he was a law enforcement officer who parked his police car in the driveway behind that person's car. Further, in this case, Robinson approached defendant in a courteous, nonthreatening fashion and engaged defendant in conversation. Only one officer was present, and he did not activate his emergency lights or siren, draw his gun, or give any orders or commands. Accordingly, no seizure occurred as a matter of law until after defendant incriminated himself. Justice ZAHRA further concluded that even if

Robinson had seized defendant, the Fourth Amendment was not violated because Robinson's actions were the product of a reasonable mistake of law. Robinson did not have the benefit of the majority's interpretation of the impeding-traffic statute at the time of the alleged offense. In fact, the only opinion at the time of these events that had interpreted the impeding-traffic statute, *Salters*, had reached the exact opposite conclusion, and that determination had stood unchallenged for more than 20 years. It was reasonable for Robinson to interpret the statute as the Court of Appeals had. Under the majority's ruling, to be reasonable, police officers must be so adept and assured in their own statutory interpretation that they would reject longstanding conclusions by Court of Appeals judges if they anticipate that the Supreme Court will one day disagree; law enforcement officers should not be held to a higher standard of legal interpretation than judges.

# OPINION

Chief Justice:
  Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 26, 2022

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                No. 162833

DAVID ALLAN LUCYNSKI,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

WELCH, J.

The Fourth Amendment protects individuals from being subjected to unreasonable searches and seizures. While police officers generally need a warrant to search or seize someone, there are recognized exceptions to this general rule. If an officer has at least a reasonable suspicion of criminal activity, based on articulable facts, then a temporary warrantless seizure is constitutional. *Terry v Ohio*, 392 US 1, 20-27; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Reasonable suspicion can be based on a mistaken belief that someone

violated the law, so long as that mistake is objectively reasonable. *Heien v North Carolina*, 574 US 54, 60-63, 66; 135 S Ct 530; 190 L Ed 2d 475 (2014).

When a defendant challenges the constitutionality of an alleged seizure, there are two questions that must be answered. First, when was the defendant seized by the officer, if at all? And second, at that moment, was the seizure constitutional? In this case, to determine whether a seizure was constitutional, we also must determine whether the officer's interpretation of the applicable statute, MCL 257.676b(1), was correct, and if not, whether the mistake was objectively reasonable.

The officer in this case claimed that he followed defendant because he believed that defendant committed a traffic violation that would have justified the subsequent seizure, questioning, search, and arrest of defendant. The district court held that there was no traffic violation, that the seizure was unconstitutional, that defendant would not be bound over for operating while intoxicated (OWI), and that the unlawfully obtained evidence must be suppressed. The prosecution argued that a "reasonable mistake" occurred as to the traffic violation, that suppression of the evidence was not required, and that the bindover decision was incorrect. The Court of Appeals agreed and further held that defendant had not been seized until after he made incriminating statements, and thus the district court erred.

Accordingly, we must decide when defendant was seized and if, at that moment, the officer had reasonable suspicion that defendant had committed a crime or, if not, whether the officer's mistaken belief was objectively reasonable. First, we hold that defendant was seized under the Fourth Amendment when the officer blocked the driveway and defendant's path of egress with a marked patrol car because, under the totality of the circumstances, a reasonable person would not have felt free to leave or to terminate the

interaction. Second, the "impeding traffic" statute at issue, MCL 257.676b(1), is only violated if the normal flow of traffic is actually disrupted. Third, the officer's mistaken reading of this unambiguous statute was not objectively reasonable, and thus no reasonable mistake of law occurred.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case to that Court to determine whether application of the exclusionary rule was the appropriate remedy for the violation of defendant's Fourth Amendment rights.

## I. BACKGROUND

On a brisk January morning, Tuscola County Sheriff's Deputy Ryan Robinson was traveling westbound on Old State Road in rural Wisner Township when he observed two cars stopped in the middle of the road from some distance away.[1] At the preliminary-examination hearing, Robinson testified that the vehicles were facing opposite directions with the drivers' windows next to one another and that the drivers appeared to be talking to one another with their windows down. One of the vehicles, a red Chevrolet Cobalt, was defendant's car. Robinson did not observe any narcotics activity and did not hear what the drivers said, but he testified that he thought a drug transaction might have occurred. Even though there were no other vehicles on Old State Road at the time, Robinson testified at the preliminary-examination hearing that he believed the vehicles were impeding traffic in violation of MCL 257.676b. Robinson also testified that he saw both cars begin moving

---

[1] Old State Road is a two-mile stretch of rural road, which Deputy Robinson described as "dirt" or unpaved. Old State Road is approximately 10 miles east of Bay City, Michigan, and appears to provide access to a handful of farms and residential homes before reconnecting to Michigan Highway 25.

when he was approximately 800 feet away, he did not have to slow down or avoid either vehicle, and he did not observe any erratic driving.

Robinson testified that he followed defendant's car "with the intention to stop the red Cobalt for impeding traffic." Robinson followed defendant in a marked patrol vehicle and turned onto the same one-lane driveway that defendant had entered, parking a few feet behind defendant's car and blocking the only path of egress. While a single lane was cleared within the driveway, the surrounding area was covered with several inches of snow. Neither the siren nor the emergency lights on Robinson's vehicle were activated by the officer.

Body-camera footage of the encounter that followed was introduced at the preliminary-examination hearing. Robinson, upon pulling into the driveway behind defendant, started to exit his car prior to putting the car in the parked position. When Robinson exited his patrol car, defendant was standing next to the driver's side door of the Cobalt facing Robinson. Robinson immediately asked whether defendant lived there, and defendant responded that it was a friend's house as he walked toward the deputy. Robinson asked what defendant was doing on the road, to which defendant replied, "Just talking about fishing." During this period, defendant had moved to put his hands in his pockets, and Robinson ordered him not to do so; defendant complied with the directive. Robinson then said, "I didn't know if maybe there was a drug deal going on, and that when I ran the plate it [came] back to" an address in Reese, Michigan. Defendant denied any drug transaction and said that Reese was where he lived and that he worked just up the road. After confirming the name of the homeowner, Robinson asked defendant if defendant had his driver's license, to which defendant replied in the negative; upon Robinson's further

4

questioning, defendant responded that he did not have a valid driver's license. This all occurred within the first two minutes of Robinson pulling into the driveway.

The possibility of a citation for impeding traffic was never mentioned during Robinson's encounter with defendant. However, Robinson testified that because he smelled the odor of marijuana and alcohol emanating from defendant and noticed that defendant's eyes were bloodshot, he proceeded to investigate whether defendant was intoxicated. Defendant admitted to smoking marijuana about 20 minutes earlier and to consuming alcohol during the day. Defendant then consented to a search of his vehicle, and Robinson found both marijuana and an open container of alcohol inside. Robinson performed several field-sobriety tests, and based upon those tests, defendant was arrested.[2] No "impeding traffic" citation was issued, but defendant was charged with operating while intoxicated (OWI), driving with a suspended license, and having an open container of alcohol in the vehicle.

## A. THE DISTRICT AND CIRCUIT COURT PROCEEDINGS

Robinson testified at defendant's preliminary-examination hearing to the facts outlined earlier. However, Robinson conceded on redirect examination that his "initial thought was that there, there may have been a drug deal or something going on, because it was a rural area and no one was around." While the deputy knew of drug exchanges in rural areas, he knew of none on Old State Road. He also acknowledged that it is not

---

[2] Defendant also consented to a breath test and a blood draw, and after making the arrest, Robinson took defendant to a hospital for the blood draw.

uncommon for people to stop their vehicle, roll down their window, and talk with acquaintances on rural roads.

Defendant's attorney asked to submit briefing to challenge the validity of the stop under MCL 257.676b and to argue that the evidence obtained by the police should be excluded. The prosecution countered that the evidence was sufficient and that, based on the facts and the statute at issue, the officer had sufficient probable cause to initiate the stop. Additionally, the prosecution argued that a reasonable mistake of law or fact does not mandate the suppression of evidence under United States Supreme Court precedent.

The district court allowed briefing and later held that the prosecution failed to prove that Robinson had sufficient cause to initiate the stop. The court held that the prosecution had presented nothing more than "an inchoate or unparticularized suspicion or hunch" that was legally insufficient to believe that a drug transaction had transpired. As to the alleged impeding-traffic violation under MCL 257.676b(1), the court held that the statute could not be violated without a showing that "real, not imagined, traffic was actually impeded or obstructed in some way by a person or a vehicle." No evidence of such impediment was presented by the prosecution, and thus the court determined that the traffic stop was invalid. Accordingly, the court held that all evidence obtained from the stop would be inadmissible in any proceeding moving forward, and it dismissed the OWI charge. The court did not address the prosecution's reasonable-mistake-of-law argument.

The prosecution sought leave to appeal in the Tuscola Circuit Court, which was denied. The prosecution then sought leave to appeal in the Court of Appeals.

6

The Court of Appeals granted the prosecution's application, limiting the issues to those raised in the application. *People v Lucynski*, unpublished order of the Court of Appeals, entered July 21, 2020 (Docket No. 353646). Despite this, the Court of Appeals resolved the appeal based on a legal theory that was not raised by the parties in the trial court or on appeal. Specifically, the panel focused on whether defendant was seized at all, a point that neither party contested in the lower courts.[3]

The Court acknowledged the constitutional right to be free from unreasonable searches and seizures and that "[a] person is seized if, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *People v Lucynski*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2020 (Docket No. 353646), pp 3-4 (citation omitted). The panel relied on *People v Jenkins*, 472 Mich 26, 33; 691 NW2d 759 (2005), for the proposition that " '[w]hen an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized.' " *Lucynski*, unpub op at 4. The Court also acknowledged that a temporary detention for questioning is constitutionally reasonable when based on reasonable suspicion of criminal activity under *Terry*. *Id*.

The panel noted that while Robinson had followed defendant, Robinson did not turn on his lights or signal for defendant to pull over. Rather, defendant voluntarily pulled into

---

[3] Both in the district court and in its application to the Court of Appeals, the prosecution argued that Robinson had intended to initiate and did initiate a traffic stop when he pulled into the driveway behind defendant. The question whether defendant was seized at all was first raised by the Court of Appeals during oral argument.

a driveway, and Robinson pulled in and parked behind defendant's car. "Lucynski then approached Deputy Robinson and began voluntarily answering Deputy Robinson's questions, which included what Lucynski had been doing on the roadway with the driver of the other vehicle and whether the homeowner was home." *Id*. at 5. The Court of Appeals held that based on the totality of the circumstances, the earliest point at which the encounter with Robinson could have become a seizure implicating the Fourth Amendment was when defendant admitted to not having a valid driver's license, because that was the earliest point at which a reasonable person would not have felt free to leave.[4] Subsequent investigation into and arrest for suspicion of OWI was deemed justifiable because defendant had been seen driving and the deputy observed signs of possible intoxication.

In a footnote, the Court held that even if MCL 257.676b(1) requires actual impediment of traffic, in light of unpublished authority holding to the contrary, i.e., *People v Salters*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2001 (Docket No. 215396), "the evidence should not have been suppressed because the traffic stop was based on Deputy Robinson's reasonable mistake of law or fact." *Lucynski*, unpub op at 6 n 5, citing *Heien*, 574 US at 60-68.

The panel concluded by holding that the district court abused its discretion when it held that the Fourth Amendment was violated and thus that the district court erred by excluding evidence from the seizure and by dismissing the OWI charge. Accordingly, the circuit court abused its discretion by denying leave to appeal. Defendant then sought leave

---

[4] Stated differently, the panel concluded that Robinson did not seize defendant merely by following him into the driveway and blocking defendant's car. Rather, the encounter became a seizure a little less than two minutes later.

8

to appeal in this Court. We granted defendant's application for leave to appeal, limited to three issues:

> (1) whether the defendant impeded traffic, in violation of MCL 257.676b(1), where there was no actual traffic to impede at that time; (2) if not, whether the deputy sheriff made a reasonable mistake of law by effectuating a traffic stop of the defendant for violating MCL 257.676b(1), see *Heien v North Carolina*, 574 US 54 (2014); and (3) whether the deputy sheriff seized the defendant when he pulled his patrol vehicle behind the defendant's vehicle in a driveway. [*People v Lucynski*, 508 Mich 947, 947 (2021).]

## II. ANALYSIS

We are tasked with determining whether the district court erred by refusing to bind defendant over for trial on the OWI charge. To bind a criminal defendant over for trial, the district court must find probable cause to believe that the defendant committed a felony. *People v Magnant*, 508 Mich 151, 161; 973 NW2d 60 (2021). "This requires evidence as to each element of the charged offense that would 'cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt.' " *Id*., quoting *People v Shami*, 501 Mich 243, 250-251; 912 NW2d 526 (2018).[5]

Defendant does not dispute that if all relevant evidence presented by the prosecution at the preliminary-examination hearing is considered, probable cause existed to support his bindover on the OWI charge. However, defendant argues that the evidence supporting his

---

[5] A district court's bindover decision is reviewed "for an abuse of discretion, which occurs when the district court's decision falls outside the range of principled outcomes." *Magnant*, 508 Mich at 161. A trial court abuses its discretion when it bases its ruling on an error of law. *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020). Questions of statutory interpretation and questions of constitutional law are reviewed de novo. *Magnant*, 508 Mich at 161; *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015). The district court's factual determinations are reviewed for clear error. *People v Vaughn*, 491 Mich 642, 650; 821 NW2d 288 (2012).

9

bindover—i.e., his admissions to the officer, the field-sobriety tests, and the blood-draw results—must be suppressed because it was obtained in violation of his constitutional rights against unreasonable search and seizure and thus constitutes fruit of the poisonous tree. See *People v Stevens (After Remand)*, 460 Mich 626, 633-634; 597 NW2d 53 (1999). Without the admission of this evidence, probable cause does not exist supporting the OWI charge. Accordingly, we must first determine whether defendant was unconstitutionally seized.

## A. DEFENDANT WAS SEIZED WHEN THE POLICE BLOCKED THE ONLY PATH OF EGRESS FROM A DRIVEWAY USING A MARKED POLICE VEHICLE

The United States Constitution guarantees an individual's right to be free from unreasonable searches and seizures. US Const, Am IV.[6] As Justice Stewart explained in *United States v Mendenhall*, 446 US 544, 553-555; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (opinion of Stewart, J.):

> [A] person is "seized" only when, *by means of physical force or a show of authority*, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. . . . As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

> * * *

---

[6] Const 1963, art 1, § 11 has historically been interpreted coextensively with the Fourth Amendment, "absent compelling reason to impose a different interpretation." *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011) (quotation marks and citation omitted). See also *Sitz v Dep't of State Police*, 443 Mich 744, 764-779; 506 NW2d 209 (1993). No party has presented an argument under the Michigan Constitution, and therefore, we do not reach the issue whether a compelling reason warrants a different interpretation.

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. [Emphasis added.]

The United States Supreme Court eventually adopted Justice Stewart's *Mendenhall* test,[7] with the added caveat that if "a person 'has no desire to leave' for reasons unrelated to the police presence, the 'coercive effect of the encounter' can be measured better by asking whether '*a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter*.' " *Brendlin v California*, 551 US 249, 255; 127 S Ct 2400; 168 L Ed 2d 132 (2007) (emphasis added), quoting *Florida v Bostick*, 501 US 429, 435-436; 111 S Ct 2382; 115 L Ed 2d 389 (1991). Hence, there are arguably two separate standards to apply—one when a person has an independent desire to leave and another if the person does not—even if they are effectively two sides of the same coin. The "test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Michigan v Chesternut*, 486 US 567, 573; 108 S Ct 1975; 100 L Ed 2d 565 (1988). "Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Id*.

---

[7] See *Immigration & Naturalization Serv v Delgado*, 466 US 210, 215; 104 S Ct 1758; 80 L Ed 2d 247 (1984).

11

This Court has adopted the same general principles, as recognized in *Jenkins*, 472 Mich at 32-33:

> A "seizure" within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *People v Mamon*, 435 Mich 1, 11; 457 NW2d 623 (1990). When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized. *Florida v Royer*, 460 US 491, 497-498, 103 S Ct 1319; 75 L Ed 2d 229 (1983) (plurality opinion).

Some interactions with the police do not rise to the level of a "seizure" under the Fourth Amendment. As noted in *Jenkins*, when there is no show of force and an officer approaches an individual in a public place and asks for "voluntary cooperation through noncoercive questioning," there will generally be no seizure. *Jenkins*, 472 Mich at 33. See also *Royer*, 460 US at 497. When exactly an interaction crosses the line and becomes a seizure, thus triggering the protections of the Fourth Amendment, is a difficult question that often sparks disagreement.

A warrantless search or seizure is presumed unconstitutional unless shown to be within one of several established exceptions. See *Illinois v Gates*, 462 US 213, 236; 103 S Ct 2317; 76 L Ed 2d 527 (1983); *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020); *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975). One frequently implicated exception to the prohibition on warrantless seizures that is relevant in this case is the investigatory stop. A brief seizure for investigative purposes does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. *Terry*, 392 US at 22, 30-31; *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001). Like an investigatory stop, a traffic stop is " 'more analogous to a so-

called "*Terry* stop" . . . than to a formal arrest.' " *Rodriguez v United States*, 575 US 348, 354; 135 S Ct 1609; 191 L Ed 2d 492 (2015), quoting *Knowles v Iowa*, 525 US 113, 117; 119 S Ct 484; 142 L Ed 2d 492 (1998), in turn quoting *Berkemer v McCarty*, 468 US 420, 439; 104 S Ct 3138; 82 L Ed 2d 317 (1984).

As previously stated, Robinson did not initiate a formal traffic stop for a violation of MCL 257.676b(1),[8] despite his testimony that this was his intention when he began following defendant.[9] Pulling defendant over on the side of the road would have been a seizure. Instead, Robinson pulled onto the driveway behind defendant, parked a few feet behind defendant, and blocked the exit. Robinson did not turn his lights on, sound his siren, or direct defendant to pull over on the side of the road. Because Robinson did not outwardly communicate his subjective intentions to defendant, they are not relevant in determining when defendant's encounter with Robinson became a seizure.

---

[8] "[T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v Glover*, 589 US ___, ___; 140 S Ct 1183, 1187; 206 L Ed 2d 412 (2020) (quotation marks and citation omitted). See also *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). We have recognized the same principle under state law. See *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016) (" 'A police officer who witnesses a person violating [the Michigan Vehicle Code, MCL 257.1 through MCL 257.923] . . . , which violation is a civil infraction, may stop [and temporarily] detain the person . . . .' "), quoting MCL 257.742(1) (alterations in original).

[9] That a police officer intended to stop or seize an individual does not mean that a seizure has occurred for Fourth Amendment purposes, because the constitutional question focuses on the objective manifestations of intent, see *Brendlin*, 551 US at 260, although subjective intentions might be relevant when they are conveyed to the person confronted, see *Michigan v Chesternut*, 486 US 567, 576; 108 S Ct 1975; 100 L Ed 2d 565 (1988).

We must therefore decide when a reasonable person in defendant's shoes would either (1) have not felt free to leave or (2) have ceased to feel free to decline Robinson's requests or otherwise terminate the encounter. *Brendlin*, 551 US at 255. Was it when defendant admitted to lacking a valid driver's license, as the Court of Appeals held, or was it sooner? In this regard, three decisions from the United States Court of Appeals for the Sixth Circuit are particularly relevant because each involves similar constitutional questions and relatively similar facts.[10]

In *United States v See*, 574 F3d 309, 311 (CA 6, 2009), a police officer saw the defendant and two other men in an unlit car parked in the lot of a public-housing complex in a high-crime neighborhood at about 4:30 a.m. The officer parked his patrol car in front of the defendant's vehicle in a manner that prevented the defendant from driving away. *Id*. The subsequent encounter led to a search of the defendant's vehicle, during which a firearm was found. *Id*. at 312. The defendant sought to suppress the evidence obtained from the search. The Sixth Circuit affirmed the district court's holding that blocking the defendant's vehicle " 'to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless *Terry* seizure.' " *Id*. at 313. As the panel noted, "Given the fact that [the officer] blocked See's car with his marked patrol car, a reasonable person in See's position would not have felt free to leave." *Id*. Because the Sixth Circuit also held that reasonable suspicion did not support the seizure, it further held

---

[10] The decisions of intermediate federal courts are not binding on this Court, although they may be considered for their persuasive value. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

14

that the seizure was unlawful and that suppression of the evidence resulting from the seizure was appropriate. *Id*. at 313-315.

In *United States v Gross*, 662 F3d 393, 396 (CA 6, 2011), during an early morning patrol, an officer noticed a vehicle legally parked in a parking lot of a public-housing complex with its engine running but with no apparent driver. The officer "noticed a barely-visible passenger" who was slumped over in the front passenger seat. *Id*. The officer "parked his police vehicle directly behind the [car] and turned on his vehicle spotlights." *Id*. The officer then approached the vehicle on foot, identified himself through the closed window, and questioned the defendant. *Id*. at 397. After noticing a partially consumed bottle of liquor in the car, the officer asked for identification or identifying information, which the occupant provided after several repeated questions. *Id*. The officer ran a warrant check and discovered that the defendant had an outstanding felony warrant, which led to the defendant's arrest and the discovery of incriminating evidence. *Id*.

Relying on *See*, the court held that the officer's act of parking his vehicle behind the defendant's legally parked car in a manner that prevented the car from leaving was a warrantless seizure and thus required reasonable suspicion of misconduct, which was lacking.[11] *Id*. at 399-400. Additionally, the panel emphasized that the officer in *Gross* had

_____

[11] The panel rejected the government's argument that the officer was merely engaged in a community-caretaker function under *United States v Koger*, 152 F Appx 429, 430-431 (CA 6, 2005). *Gross*, 662 F3d at 400-401. In *Koger*, the officers had approached an illegally stopped vehicle that was blocking a local highway and had a sleeping or unconscious driver. *Koger*, 152 F Appx at 430. The court found that the illegality of that situation justified a brief seizure, and the community-caretaker function was merely an alternative rationale. *Gross*, 662 F3d at 400-401.

the right to engage in a consensual encounter if done in a manner that did not amount to a *Terry* stop, such as parking alongside the vehicle. *Id*. at 401.

The decision in *O'Malley v Flint*, 652 F3d 662 (CA 6, 2011), illustrates how slightly different facts can lead to the opposite conclusion.[12] In *O'Malley*, a police officer in the city of Flint "was driving an *unmarked police vehicle* and noticed a blue Chevrolet Tahoe that looked like a Michigan State Police vehicle." *Id*. at 665 (emphasis added). The officer began following the vehicle because he suspected that it was being used to impersonate a law-enforcement officer. *Id*.

> Eventually, the Tahoe was driven into a residential driveway and parked. After its driver, plaintiff O'Malley, exited the Tahoe and began walking toward the back of the house, [Officer] Hagler parked his police vehicle in the driveway behind the Tahoe. Thereafter, Hagler approached O'Malley, identified himself as a police officer, and said that he would like to speak with him. According to O'Malley, Hagler asked about the vehicle before identifying himself. [*Id*.]

The communications and interactions that followed led to O'Malley being detained at a nearby police station. *Id*. at 666. O'Malley was never charged, and he was eventually released. *Id*.

On the seizure question, the court distinguished *Gross* and *See*, holding that O'Malley was not seized for constitutional purposes at the time of the initial encounter and questioning. The panel emphasized several factual differences. First, O'Malley was out of his vehicle and walking toward the home when the officer parked behind the Tahoe. *Id*.

---

[12] *O'Malley* was a civil action filed under 42 USC 1983 seeking damages for the alleged unlawful search, seizure, and detention of O'Malley. Thus, rather than deciding whether evidence should be suppressed as in *See*, the *O'Malley* court was determining whether the officer was entitled to qualified immunity under federal law, which required an assessment of the constitutionality of the police encounter. *O'Malley*, 652 F3d at 665, 668-671.

16

at 669. The panel opined that "parking behind a vehicle in a driveway does not inherently send a message of seizure because it is how driveways are routinely used." *Id*. Second, the officer's tone, identification of himself as a police officer, and initial statement of " 'Hey! Whose truck is that?' " were not threatening and merely indicated a desire to "talk to O'Malley about the Tahoe." *Id*. Third, that "O'Malley stopped walking to respond to [Officer] Hagler's inquiry also does not, by itself, transform this encounter into a seizure for purposes of the Fourth Amendment." *Id*., citing 4 LaFave, Search & Seizure (4th ed), § 9.4, and *United States v Thomas*, 430 F3d 274, 277, 280 (CA 6, 2005).

Returning to the facts of this case, while Robinson did not activate his lights or siren, he parked a few feet behind defendant's car in the single-lane driveway. Defendant described his vehicle as being blocked in, and the prosecution has not disputed this characterization. Robinson testified that his vehicle was not "offset very much because essentially it's just a one lane driveway. I can't say if it was offset or not, but it was behind his vehicle." Our review of the body-camera footage also supports defendant's characterization of being blocked in. The presence of several inches of snow on the ground and the apparent lack of an alternative path for exiting the driveway further supports this conclusion. The body-camera footage shows defendant standing next to the driver's side door of the Cobalt facing Robinson the moment defendant came into view as Robinson emerged from his patrol car. At the preliminary examination, Robinson also described defendant as "standing out of the vehicle" when Robinson arrived.

Beyond the positioning of defendant and Robinson's patrol car, other facts concerning the setting of this police–citizen encounter are also important. See *Chesternut*, 486 US at 573. The encounter at issue occurred on a cold January morning in rural

17

Michigan in one of a handful of residential driveways off a dirt road. Robinson testified that he followed defendant's car for a short period before following defendant onto the driveway. The body-camera footage shows that Robinson quickly began exiting his car before the car even came to a full stop.

What is not clear under the facts of this case, as in many seizure cases, is whether defendant had an independent desire to keep moving. The driveway and home belonged to his friend. The record is silent on whether defendant was planning to visit with his friend before Robinson began following defendant or if defendant was planning to keep driving. Under either of these hypothetical scenarios, we conclude that defendant was seized under the standards that the United States Supreme Court has set forth.

Under the totality of the circumstances, we hold that defendant was seized at the moment Robinson, in his marked police vehicle, blocked defendant's car, resulting in no means for defendant to exit the single-lane driveway. As aptly stated by Professor Wayne LaFave, "boxing the car in," among other things, "will likely convert the event into a Fourth Amendment seizure." 4 LaFave, Search and Seizure (6th ed), § 9.4(a), pp 596-599. Applying similar logic, using a marked police vehicle to block a civilian vehicle's ability to exit a single-lane driveway to facilitate questioning or an investigation is a show of force on behalf of the police that can give rise to a seizure within the meaning of the Fourth Amendment. Under the circumstances of this case, including the rural setting, the way the encounter was initiated by the officer swiftly following defendant down a private driveway, and the fact that the officer's police vehicle blocked defendant's car in the driveway, a reasonable person would not have felt free to leave the scene, even though the police officer did not activate emergency lights or a siren. The same facts would cause a reasonable

person to feel compelled to answer questions posed by the officer who had followed him and blocked his path of egress from the driveway of a home he did not own. This is consistent with the Sixth Circuit's holding that blocking someone's parked car to " 'determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless *Terry* seizure . . . .' " *Gross*, 662 F3d at 400, quoting *See*, 574 F3d at 313. *Gross* and *See* are not anomalous decisions. Many other courts have reached the same conclusion under a variety of similar factual circumstances.[13]

---

[13] See, e.g., *State v Rosario*, 229 NJ 263, 273; 162 A3d 249 (2017) (holding that "[a] person sitting in a lawfully parked car outside her home who suddenly finds herself blocked in by a patrol car that shines a flood light into the vehicle, only to have the officer exit his marked car and approach the driver's side of the vehicle, would not reasonably feel free to leave"); *Robinson v State*, 407 SC 169, 177, 183; 754 SE2d 862 (2014) (holding that an investigatory stop occurred when an officer blocked a vehicle in a parking lot with the officer's patrol car); *United States v Jones*, 678 F3d 293, 297, 305 (CA 4, 2012) (holding that the defendant was seized when officers followed him from a public street onto private property, blocked his car from leaving without activating lights, and then quickly approached the defendant, who was near the car, to initiate questioning); *State v Garcia-Cantu*, 253 SW3d 236, 246 & n 44 (Tex Crim App, 2008) (holding that a seizure occurred when the officer "parked his patrol car" such that it " 'boxed in' [the defendant's] parked truck, preventing him from voluntarily leaving" and noting that "[m]ost courts have held that when an officer 'boxes in' a car to prevent its voluntary departure, this conduct constitutes a Fourth Amendment seizure"); *United States v Burton*, 441 F3d 509, 511 (CA 7, 2006) (holding that officers on bicycles seized a vehicle stopped in a roadway by placing their bicycles so that the driver could not drive away); *State v Jestice*, 177 Vt 513, 515; 2004 VT 65; 861 A2d 1060 (2004) (holding that "when a police cruiser completely blocks a motorist's car from leaving, courts generally find a seizure. . . . [T]he fact that it was possible for the couple to back up and maneuver their car past the patrol car and out of the trailhead parking lot does not convince us that this was a consensual encounter"); *State v Roberts*, 293 Mont 476, 483; 1999 MT 59; 977 P2d 974 (1999) (holding that a seizure occurred when an officer, "armed and in uniform," followed the defendant's car without activating lights or sirens, blocked the car from backing out of a driveway, and made an additional "show of authority in immediately exiting his patrol car and approaching" the defendant, who had exited his car simultaneously and was standing by the car door); *McChesney v State*, 988 P2d 1071, 1075 (Wy, 1999) (noting that an officer having "blocked in" a defendant's car was "sufficient to constitute a seizure"); *United States v Tuley*, 161 F3d 513, 515 (CA 8, 1998) (holding that "[b]locking a vehicle so its occupant is unable to

19

We also note that, unlike in *O'Malley*, Robinson was not driving an unmarked police vehicle and did not wait until after the civilian vehicle had parked and its occupant had already begun walking around the home before pulling into the driveway and blocking the path of egress. Rather, when Robinson emerged from his vehicle, defendant was by the side of his vehicle and facing the patrol car, as if either defendant had just exited and was waiting for the police officer who had followed him into the driveway or defendant was already walking toward the police officer who had just blocked his car into the driveway. This is precisely what one would expect of a reasonable person under the circumstances.[14]

If a reasonable person in defendant's place did not have an independent desire to leave, but nevertheless did not want to interact with Robinson, the other options available to them would have been to attempt to enter a home that they did not own (and without knowledge whether the owner was home) or wander off into a frozen field some distance

---

leave during the course of an investigatory stop is reasonable to maintain the status quo while completing the purpose of the stop"); *Commonwealth v Helme*, 399 Mass 298, 300; 503 NE2d 1287 (1987) (holding that an investigatory stop occurred when an officer "parked the police cruiser so as to block the defendant's [parked] automobile and prevent it from leaving the parking lot"); *United States v Kerr*, 817 F2d 1384, 1386-1387 (CA 9, 1987) (holding that when a uniformed officer approached a car after blocking the one-lane driveway as the defendant was backing out, a seizure occurred, leaving the defendant with "no reasonable alternative except an encounter with the police"); *People v Wilkins*, 186 Cal App 3d 804, 809; 231 Cal Rptr 1 (1986) (holding that a seizure occurred when the officer "stopped his marked patrol vehicle behind the parked station wagon in such a way that the exit of the parked vehicle was prevented"); *People v Jennings*, 45 NY2d 998, 999; 385 NE2d 1045 (1978) (holding that a seizure occurred when officers blocked the defendant's vehicle in a parking lot with a patrol car).

[14] While the dissent relies heavily on *O'Malley*, we find that decision to be distinguishable for the reasons previously explained, and thus it carries less persuasive value for purposes of determining when a seizure occurred under the facts of this case. See *Abela*, 469 Mich at 607 ("Although lower federal court decisions may be persuasive, they are not binding on state courts.").

from town in a rural area. Neither would be a viable option from the perspective of a reasonable person after having been followed and then blocked in by a police officer. Accordingly, the Court of Appeals erred by holding that defendant was not seized until after he had made incriminating statements about not having a valid driver's license. Rather, under the facts of this case, defendant was seized at the moment the officer blocked defendant's car in the driveway with a marked police vehicle. The next question is whether there was legally sufficient suspicion of criminal activity at that moment.

## B. MCL 257.676b(1) REQUIRES ACTUAL INTERFERENCE WITH THE NORMAL FLOW OF TRAFFIC

The warrantless seizure of a person generally must be supported by constitutionally sufficient suspicion that the individual has engaged in criminal conduct. As previously recognized in note 8 of this opinion, " '[a] police officer who witnesses a person violating [the Michigan Vehicle Code, MCL 257.1 through MCL 257.923] . . . , which violation is a civil infraction, may stop [and temporarily] detain the person . . . .' " *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016), quoting MCL 257.742(1) (alterations in original). This aligns with United States Supreme Court precedent stating that "the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity," *Kansas v Glover*, 589 US ___, ___; 140 S Ct 1183, 1187; 206 L Ed 2d 412 (2020) (quotation marks and citation omitted), and that a traffic stop is more similar to a temporary seizure under *Terry* than a formal arrest, *Rodriguez*, 575 US at 354. A brief seizure for investigative purposes does not violate the Fourth Amendment if the officer has a

21

reasonably articulable suspicion[15] that criminal activity is afoot. *Terry*, 392 US at 22, 30-31; *Oliver*, 464 Mich at 192.

The stated justification for Robinson's encounter with defendant was an alleged violation of MCL 257.676b(1). The parties do not dispute that if Robinson observed defendant violate MCL 257.676b(1), then Robinson would have had constitutionally sufficient suspicion to temporarily seize defendant. The statute provides, in relevant part:

> Subject to subsection (2), *a person*, without authority, *shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular*, streetcar, or pedestrian *traffic upon a public street or highway in this state, by means of a barricade, object, or device*, or with his or her person. This section does not apply to persons maintaining, rearranging, or constructing public utility or streetcar facilities in or adjacent to a street or highway. [MCL 257.676b(1) (emphasis added).]

Our primary goal when interpreting a statute is to give effect to the Legislature's intent. *Magnant*, 508 Mich at 162. We begin with the plain and ordinary meaning of the statute, and if the text is clear and unambiguous, then it will be enforced as written. *People v Sharpe*, 502 Mich 313, 326-327; 918 NW2d 504 (2018).

Given that the parties do not dispute that defendant could be a "person" and his vehicle an "object" under MCL 257.676b(1), we will assume without deciding that the statute applies to a person operating a vehicle on a roadway.[16] In light of that assumption,

---

[15] "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996).

[16] MCL 257.676b focuses on the conduct of a person in relationship to the "normal flow of vehicular, streetcar, or pedestrian traffic . . . ." MCL 257.676b(2) refers specifically to a person standing in a roadway and carves out exceptions for construction, maintenance, and utility work, as well as the solicitation of contributions for a charitable or civic organization under certain circumstances.

the focal issue is whether MCL 257.676b(1) requires evidence that the accused's conduct actually affected the normal flow of traffic or whether the mere possibility of it affecting traffic is sufficient.[17]

The prohibited conduct is to "block, obstruct, impede, or otherwise interfere with the normal flow of vehicular, streetcar, or pedestrian traffic upon a public street or highway . . . ." MCL 257.676b(1). The statute's clear terms thus require some evidence that the accused's conduct *actually affected* the usual smooth, uninterrupted movement or progress of the *normal flow* of traffic on the roadway, which requires an assessment of traffic at the time of the alleged offense. Interference with a police officer's ability to travel on a road could sustain a violation of MCL 257.676b(1) just as easily as interference with other vehicles traveling on a road. However, the statute is not violated if the normal flow of traffic was never impeded, blocked, or interfered with. In short, in order to interfere with the normal flow of traffic, some traffic must have actually been disrupted or blocked.

We reject the prosecution's argument that the potential interference with hypothetical or nonexistent traffic is sufficient. This argument ignores the phrase "normal flow of . . . traffic" as used in MCL 257.676b(1). Such an interpretation would also lead to the untenable situation in which every person crossing a street and every vehicle

---

[17] The Court of Appeals has taken conflicting positions on this question in at least two unpublished opinions. Prior to the genesis of this case, the Court of Appeals had held without analysis that MCL 257.676b(1) does "not require a showing of an actual impediment to the smooth flow of traffic . . . ." *People v Salters*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2001 (Docket No. 215396), p 2. But after the Court of Appeals issued its opinion in this case, a different panel held that MCL 257.676b(1) was not violated when there was no evidence of any actual impediment of the flow of traffic. See *People v Estelle*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2021 (Docket No. 356656), p 3.

23

attempting to park along the side of a road would potentially be guilty of a civil infraction even if no other vehicles or pedestrians are present on the roadway.[18]

In this case, the prosecution has not introduced evidence sufficient to establish even reasonable suspicion to believe that defendant violated MCL 257.676b(1). Old State Road has been described as a rural stretch of unpaved road. While the record is silent as to typical traffic volume on Old State Road, it is undisputed that no vehicles other than Robinson's, defendant's, and a third unidentified driver's were on the road during the relevant time period. Robinson observed defendant's car and another car stopped side by side in the road from some distance away, but both cars began moving again when Robinson was still about 800 feet away. Robinson admitted that he did not have to slow his car down or go around either vehicle. Stated differently, the normal flow of vehicular traffic on the road was not impeded or disrupted. Under these facts, and in keeping with the district court's ruling, there is no evidence in the record to sustain the accusation that defendant violated MCL 257.676b(1).

## C. ROBINSON'S MISTAKE OF LAW WAS NOT REASONABLE

In the absence of a warrant, constitutionally sufficient suspicion of a crime, or another recognized exception, the seizure of an individual is presumed unconstitutional. See *Gates*, 462 US at 236; *Hughes*, 506 Mich at 524-525. However, drawing on the notion

---

[18] While "statutes must be construed to prevent absurd results, injustice, or prejudice to the public interest," *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999), we need not rely on this doctrine today because no reasonable reading of MCL 257.676b(1) supports the prosecution's argument. Moreover, MCL 257.672 appears to address the prosecution's concerns about people abandoning their vehicles in the middle of a road without fear of consequence or the effect on other drivers.

24

that the "touchstone of the Fourth Amendment is 'reasonableness,' " the United States Supreme Court has held that "reasonable suspicion" or "probable cause" sufficient to seize an individual without a warrant can arise from a police officer's "reasonable mistake" of fact or law. *Heien*, 574 US at 60-61 (quotation marks and citation omitted). Stated differently, the Fourth Amendment is not violated if a police officer's suspicion that the defendant's conduct was illegal is based on a "reasonable mistake" about what the law required. *Id*. at 66.

A review of the facts and analysis in *Heien* provides insight into what kinds of mistakes of law are "reasonable." In *Heien*, a police officer saw the defendant driving down a highway with only one working brake light. *Id*. at 57. The officer pulled the defendant over, believing it was unlawful to have a single working brake light. *Id*. at 57-58. A subsequent search of the car revealed cocaine. *Id*. at 58.

*Heien* required the United States Supreme Court to decide whether the officer's belief that it was a traffic violation to have only one working brake light was a reasonable mistake of law. Under the state's vehicle code, a car needed to have "a stop lamp on the rear of the vehicle" that could be "incorporated into a unit with one or more other rear lamps." *Id*. at 59 (quotation marks and citation omitted). In concluding that the mistake was reasonable, the Court noted the internal inconsistency in the vehicle code's language. *Id*. at 67. While the code stated that a driver must have "a stop lamp," suggesting that just one was enough, it later stated that the lamp "may be incorporated into a unit with one or more other rear lamps." *Id*. at 67-68. The word "other" suggested that a "stop lamp" is a kind of "rear lamp," and a different section of the vehicle code required "all originally equipped rear lamps" to be in "good working order." *Id*. (quotation marks and citation

25

omitted).  Put together, the code sections were unclear as to whether one faulty brake light alone would violate the law.  Given the ambiguity in the code's language, which had also led to disagreement within the state courts, the Court concluded that the officer's mistaken belief was reasonable.

The Court's holding in *Heien* is not carte blanche authority to ignore or remain ignorant of the law, nor are reasonable mistakes easily established.  "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable.  We do not examine the subjective understanding of the particular officer involved."  *Id*.  *Heien* further held that this "inquiry *is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity* for a constitutional or statutory violation.  Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce."  *Id*. at 67 (emphasis added).

We also find persuasive the guidance provided by Justice Kagan's concurring opinion in *Heien* about what constitutes an objectively reasonable mistake.  As she noted, reasonable mistakes of law should be "exceedingly rare."  *Id*. at 70 (Kagan, J., concurring) (quotation marks and citation omitted).  "If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake.  But if not, not."  *Id*.  Stated differently, the misunderstanding of an unambiguous statute is not an objectively reasonable mistake of law.

Taken together, *Heien* tells us that objectively reasonable mistakes of law occur in exceedingly rare circumstances in which an officer must interpret an ambiguous statute.  Other courts have reached the same conclusion.  See, e.g., *United States v Stanbridge*, 813

26

F3d 1032, 1037 (CA 7, 2016) (holding that statutory ambiguity is a prerequisite to a determination that an officer's mistake of law was objectively reasonable); *United States v Alvarado-Zarza*, 782 F3d 246, 250 (CA 5, 2015) (holding that an officer's mistaken reading of an unambiguous statute was not objectively reasonable). Under our precedent, "[a] statute is ambiguous if two provisions irreconcilably conflict or if the text is equally susceptible to more than one meaning." *People v Hall*, 499 Mich 446, 454; 884 NW2d 561 (2016). While qualified immunity applies to officers so long as they have not violated a clearly established statutory right, the mistake-of-law doctrine announced in *Heien* is "not as forgiving." *Heien*, 574 US at 67.

We hold that to the extent Robinson's seizure of defendant was based on a belief that MCL 257.676b(1) was violated, his mistake of law was not objectively reasonable. Of critical importance is our prior conclusion that MCL 257.676b(1) is not ambiguous. One cannot be guilty of violating MCL 257.676b(1) without evidence that the "normal flow" of actual traffic was disrupted, and Robinson admitted that no disruption occurred. Unlike the convoluted statute at issue in *Heien*, discerning the meaning of MCL 257.676b(1) does not require "hard interpretive work." *Heien*, 574 US at 70 (Kagan, J., concurring). See also *People v Maggit*, 319 Mich App 675, 690-691; 903 NW2d 868 (2017) (holding that a mistaken reading of an unambiguous ordinance was not a reasonable mistake of law); *United States v Stanbridge*, 813 F3d 1032, 1037 (CA 7, 2016) ("The statute isn't ambiguous, and *Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute.").

We do not find the prosecution's or the Court of Appeals' reliance on the *Salters* decision to be persuasive. *Salters* was an unpublished decision; therefore, it is not a

precedential statement of law. MCR 7.215(C)(1); *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 51; 821 NW2d 1 (2012).[19] The more critical flaw with *Salters*, however, was the Court's decision to base its holding entirely on the perceived purpose of the statute instead of also engaging with the text of MCL 257.676b(1).[20] The Court of Appeals in this case committed the same error by failing to independently analyze MCL 257.676b(1). Additionally, the 2001 *Salters* decision does not appear to have been cited or relied on for its conclusory interpretation of MCL 257.676b in any appellate decision in Michigan until the Court of Appeals' decision in this case. Moreover, in *People v Estelle*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2021 (Docket No. 356656), p 3, the Court of Appeals engaged with the text of MCL 257.676b(1) for the first time in 20 years and concluded, like we do today, that some evidence of actual interference with the normal flow of traffic is required. While *Estelle* was decided after the Court of Appeals issued its opinion in this case, the Court held that MCL 257.676b(1) was clear on its face as to requiring actual disruption or interference with the normal flow of traffic.

---

[19] See *Davis v United States*, 564 US 229, 241; 131 S Ct 2419; 180 L Ed 2d 285 (2011) ("[W]hen *binding* appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their . . . responsibilities.") (emphasis altered).

[20] The entirety of the statutory analysis in *Salters* encompassed three conclusory sentences:

> The intent of the statute was clearly to prohibit a vehicle from impeding vehicular or pedestrian traffic in order to promote public safety. Consistent with this purpose, we conclude that the statute did not require a showing of an actual impediment to the smooth flow of traffic in order to establish a violation of the statute. The trial court did not err in finding that the stop was proper. [*Salters*, unpub op at 2.]

Simply put, a single unpublished decision coming out the other way does not transform an unambiguous statute into an ambiguous one. Nothing in the *Heien* majority opinion suggests that a single appellate decision incorrectly interpreting an unambiguous statute makes a mistaken understanding of such a statute automatically reasonable. This is not to say that favorable caselaw is irrelevant to whether a mistaken interpretation is reasonable. Nonprecedential, unpublished authority that has not been relied on in subsequent appellate decisions, like the *Salters* opinion, is simply less persuasive and less likely to be dispositive than published precedent. Objectively reasonable mistakes should be confined to the exceedingly rare instances of truly ambiguous statutes.[21]

The dissent's reliance on *Michigan v DeFillippo*, 443 US 31; 99 S Ct 2627; 61 L Ed 2d 343 (1979), is not persuasive. That case concerned the validity of an arrest made under an ordinance requiring individuals to identify themselves to a police officer upon request, and the statute was declared unconstitutional after the arrest. *Id*. at 33. The United States Supreme Court upheld the arrest as valid at the time because there was "no controlling precedent that [the] ordinance was or was not constitutional, and hence the *conduct observed violated a presumptively valid ordinance*," *id*. at 37 (emphasis added), although the "outcome might have been different had the ordinance been 'grossly and flagrantly unconstitutional,'" *Heien*, 574 US at 64, quoting *DeFillippo*, 443 US at 38. The presumption that an ordinance or statute is valid until declared otherwise is very different

---

[21] While at least one federal court has held, in the qualified-immunity context, that "[f]avorable case law goes a long way to showing that an interpretation is reasonable," *Barrera v Mount Pleasant*, 12 F4th 617, 621 (CA 6, 2021), that principle is not controlling here. We do not find the principle articulated in *Barrera*, a decision about qualified immunity, to be applicable to the situation before this Court.

from determining what the text of a statute or ordinance allows or requires. *Heien* recognized this point by emphasizing that despite the subsequent ruling that the statute was unconstitutional, this ruling did "not change the fact that DeFillippo's conduct was lawful [sic] when the officers observed it." *Heien*, 574 US at 64. No one disputed whether the facts supported a violation of the ordinance, and because the ordinance was considered lawful at the time of the arrest, the officers had ample probable cause to arrest DeFillippo. *Id*. at 64-65.

The same is not true in this case because the text of MCL 257.676b(1) is unambiguous and defendant's conduct, as observed by Robinson, did not violate the statute. This is contrary to *DeFillippo*, which involved conduct falling under an unambiguous ordinance that was later declared unconstitutional. Accordingly, Robinson's mistaken understanding of MCL 257.676b(1) was not a reasonable mistake of law under *Heien*, and we reverse the Court of Appeals' holding to the contrary.[22]

## D. SUMMARY AND UNRESOLVED QUESTIONS

Given our conclusion that defendant was seized the moment Robinson blocked the driveway and prevented egress, defendant's incriminating statements and the officer's visual and olfactory observations that the Court of Appeals relied upon to justify further

---

[22] While *Heien* instructs us not to "examine the subjective understanding of the particular officer involved," *Heien*, 574 US at 66, it is noteworthy that Robinson did not mention impeding or interfering with traffic during his recorded interactions with defendant. This is contrary to the facts in *Heien*, in which the officer clearly informed the occupants that he stopped their vehicle because of a faulty rear brake light. *Id*. at 57-58. While we need not decide the issue today, we question whether an explanation for a warrantless stop or seizure of an individual that was never conveyed to the individual and was not raised until after prosecution of the individual commenced is entitled to deference as a reasonable mistake of law.

inquiry and an eventual arrest were obtained in violation of defendant's Fourth Amendment rights. Prior to Robinson blocking defendant in, defendant had not made any incriminating statements, and thus such statements could not have justified a seizure. A seizure could have been justified if Robinson had reasonable suspicion to believe that defendant had violated the law, but as the district court previously held, there was no evidence to support Robinson's hunch that an illegal drug transaction had taken place on the road, and that ruling was not appealed. A suspected violation of MCL 257.676b(1) also could not serve as reasonable suspicion given our previous conclusions. Accordingly, we have not been presented with any lawful justification for the seizure, and the district court did not err by holding that the seizure violated defendant's constitutional rights.

We reverse the Court of Appeals' holding that defendant's initial interactions with Robinson were consensual and that the earliest defendant was seized was when he admitted that he lacked a valid driver's license. Instead, we hold that defendant was seized when his egress was blocked by a marked police vehicle, and this seizure violated defendant's Fourth Amendment rights. However, the existence of a Fourth Amendment violation does not always mandate application of the exclusionary rule to evidence gathered as a result of the unlawful seizure. See *Gates*, 462 US at 223; *People v Hawkins*, 468 Mich 488, 499; 668 NW2d 602 (2003). The Court of Appeals did not determine whether exclusion of the evidence was the appropriate remedy because of its holding that no Fourth Amendment violation occurred. We leave the resolution of this question to the Court of Appeals on remand.

31

## III.  CONCLUSION

For the reasons previously discussed, we hold that defendant was seized at the moment his car was blocked in the driveway by a marked police vehicle, MCL 257.676b(1) is not violated unless the normal flow of traffic has actually been disrupted, and the officer's misunderstanding of the statute was not a reasonable mistake of law under *Heien*. We reverse the judgment of the Court of Appeals and remand this case to that Court to determine whether application of the exclusionary rule was the appropriate remedy.

Elizabeth M. Welch
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement (as to Parts I,
           II(A), and II(B))
Megan K. Cavanagh

32

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                             No. 162833

DAVID ALLAN LUCYNSKI,

      Defendant-Appellant.

_____

CLEMENT, J. (*concurring in part and dissenting in part*).

      I join the majority opinion as to Parts I, II(A), and II(B) because I agree that the stop in question constituted a seizure under the Fourth Amendment and that this seizure was not justified by reasonable suspicion of criminal wrongdoing. However, I join the dissent as to its Part II because I believe that, pursuant to *Heien v North Carolina*, 574 US 54; 135 S Ct 530; 190 L Ed 2d 475 (2014), the evidence should not have been excluded given that the unconstitutional seizure was a result of a police officer's reasonable mistake of law.

                                          Elizabeth T. Clement

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                   No. 162833

DAVID ALLAN LUCYNSKI,

     Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

Deputy Robinson did not stop or in any way seize defendant when he pulled his patrol car into the driveway behind defendant's parked car. As expressed in *O'Malley v Flint*,[1] parking cars one after another is typically the way a driveway functions; there is nothing inherently coercive about a police officer parking behind another car in a driveway. Further, Deputy Robinson approached defendant in a courteous, nonthreatening fashion and engaged defendant in conversation. On these undisputed facts, no seizure occurred as a matter of law until after defendant incriminated himself.[2]

Because there was no seizure, this case does not require interpretation of MCL 257.676b(1), the impeding-traffic statute. Nonetheless, a majority of this Court reaches the opposite conclusion. Accordingly, I further conclude that the Fourth Amendment was

_____

[1] *O'Malley v Flint*, 652 F3d 662, 669 (CA 6, 2011).

[2] Defendant admitted to driving without a license and to drinking and smoking marijuana before driving; in addition, marijuana and an open container of alcohol were found in defendant's car.

not violated because the actions of Deputy Robinson were the product of a reasonable mistake of law. Simply put, we should not hold a law enforcement officer to a higher standard of legal interpretation than judges. Because a prior panel of the Michigan Court of Appeals determined in 2001 that the impeding-traffic statute is violated when cars stop in a roadway—regardless of whether traffic is, in fact, impeded—and that determination has stood unchallenged for more than 20 years, it was reasonable for Deputy Robinson to interpret the statute in a like manner. For these independent reasons, I dissent. The evidence produced as a result of Deputy Robinson's encounter with defendant should not be suppressed.

I

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[3] A seizure of a person is "meaningful interference, however brief, with an individual's freedom of movement."[4] Put another way, a seizure occurs when "a police officer accosts an individual and restrains his freedom to walk away . . . ."[5] This can be accomplished either "by means of force or show of authority . . . ."[6] But "not all personal intercourse between [law enforcement] and citizens involves 'seizures' of persons."[7] "When an officer

---

[3] US Const, Am IV.

[4] *United States v Jacobsen*, 466 US 109, 113 n 5; 104 S Ct 1652; 80 L Ed 2d 85 (1984).

[5] *Terry v Ohio*, 392 US 1, 16; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[6] *Id.* at 19 n 16.

[7] *Id.*

2

approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized."[8]

The United States Court of Appeals for the Sixth Circuit found such an instance of voluntary cooperation in *O'Malley v Flint*.[9] *O'Malley* is instructive here given that the pertinent facts are virtually identical. In *O'Malley*, a police officer observed and followed a blue Chevrolet Tahoe that he suspected was being used to impersonate a police officer. The Tahoe was driven into a residential driveway and parked. After its driver, Sean O'Malley, exited the Tahoe and began walking toward the back of the house, the officer parked his police vehicle in the driveway behind the Tahoe. The officer approached O'Malley and said that he would like to speak with him. O'Malley stopped and answered the officer's questions.

Given these facts, the court held that no seizure occurred because "a reasonable person would feel free to continue walking even after [the officer's] vehicle was parked behind the unoccupied Tahoe."[10] The panel explained that O'Malley not only reasonably thought that he was free to leave his vehicle at the time of the alleged seizure but, in fact, had left it and was walking away from it. "[P]arking behind a vehicle in a driveway does

---

[8] *People v Jenkins*, 472 Mich 26, 33; 691 NW2d 759 (2005). The majority opinion curiously states that "[w]hen exactly an interaction crosses the line and becomes a seizure" is a "difficult question." This is not a difficult question at all. If an officer, through the use of force or a show of authority, prevents a pedestrian from walking away, it is a seizure. If an officer talks to a pedestrian without the use of force or a show of authority, it is not a seizure.

[9] *O'Malley*, 652 F3d at 665.

[10] *Id*. at 669.

3

not inherently send a message of seizure because it is how driveways are routinely used."[11] The court found the following facts probative: (1) the officer "was not accompanied by the threatening presence of several officers"; (2) the officer "neither displayed a weapon, nor touched O'Malley"; and (3) the officer "did not use language or a tone of voice compelling compliance. Rather, he merely stated that he was a police officer . . . and said he wanted to talk to O'Malley about the Tahoe."[12] The court explained that the mere fact that O'Malley stopped walking to respond to the officer's questions did not transform the encounter into a seizure, and it held that in view of the totality of the circumstances, "O'Malley was not 'seized' for purposes of the Fourth Amendment at the time of the initial encounter and questioning."[13]

Similarly, defendant in this case was not seized at the time of the initial encounter and questioning. Deputy Robinson observed and followed defendant from his police car. After defendant pulled into a driveway, Deputy Robinson pulled into the driveway behind him like any private citizen who wished to speak with him would do. By the time Deputy Robinson pulled into the driveway and exited his vehicle, defendant was out of his parked

---

[11] *Id*.

[12] *Id*. (cleaned up). See also *United States v Matthews*, 278 F3d 560, 561-562 (CA 6, 2002) (holding that a person walking down the street was not detained when an officer driving in a marked police car yelled, "Hey, buddy, come here," because the statement was a request rather than an order) (quotation marks omitted); *United States v Caicedo*, 85 F3d 1184, 1191 (CA 6, 1996) (holding that no seizure occurred when, as the car in question moved slowly through a bus terminal's parking lot, the officer "asked for permission to speak to either [the driver] or his passenger as [the driver] drove toward the exit, and . . . [the driver] voluntarily stopped the car").

[13] *O'Malley*, 652 F3d at 669.

vehicle and appeared to be approaching the adjacent house. Deputy Robinson asked defendant if he lived there, and defendant stated that a friend lived there. Defendant then approached Deputy Robinson and began voluntarily answering questions. During the conversation, defendant admitted that he did not have a driver's license, admitted that he had been drinking and smoking marijuana earlier, and performed poorly on a field-sobriety test, all of which gave Deputy Robinson sufficient cause to place defendant under arrest.

These undisputed facts simply do not form a basis on which to conclude that Deputy Robinson seized defendant. An objectively reasonable person would not feel obligated to talk to Deputy Robinson simply because he was a law enforcement officer who parked his police car in the driveway behind that person's car. A critical component of a seizure is police coercion. Coercion is established by an affirmative use of force or show of authority that sends a message to someone that they are not free to go about their business. No coercive use of force or show of authority was present in this case.

We are materially aided in this case by video evidence obtained from Deputy Robinson's body camera. As in *O'Malley*, the encounter here involved a lone officer; Deputy Robinson "was not accompanied by the threatening presence of several officers."[14] Deputy Robinson "neither displayed a weapon, nor touched [defendant]."[15] Further, Deputy Robinson "did not use language or a tone of voice compelling compliance."[16]

---

[14] *Id*. (quotation marks and citation omitted).

[15] *Id*.

[16] *Id*. Deputy Robinson also did not touch defendant or display a weapon. See *United States v Mendenhall*, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (opinion of Stewart, J.) ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the

5

Much like the officer in *O'Malley*, Deputy Robinson merely approached defendant and asked questions about what defendant was doing. Defendant could have declined to answer the questions and then continued to his friend's home. "The fact that [defendant] stopped walking to respond to [Deputy Robinson's] inquiry also does not, by itself, transform this encounter into a seizure for purposes of the Fourth Amendment."[17] Curiosity and the basic human instinct to engage with people who approach you in a nonthreatening manner are simply not enough to turn noncoercive police activity into a seizure. The majority opinion in essence concludes that Deputy Robinson's activity was coercive and amounted to an unconstitutional seizure merely because he was a uniformed deputy sheriff functioning out of a marked sheriff's vehicle. Caselaw is clear, however, that the Fourth Amendment is not violated under these circumstances. No action by Deputy Robinson amounted to a use of force or show of authority that would cause defendant to conclude that he was not free to decline to engage with Deputy Robinson and simply walk away.

The majority opinion acknowledges *O'Malley*, but it fails to articulate a genuine difference between the facts at issue in that case and the facts in the present case. It merely observes two mundane factual differences, neither of which is of consequence under Fourth

---

display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."). The majority opinion cites Justice Stewart's list of circumstances indicating a seizure, but none of those circumstances is present here.

[17] *O'Malley*, 652 F3d at 669. See also *Immigration & Naturalization Serv v Delgado*, 466 US 210, 216; 104 S Ct 1758; 80 L Ed 2d 247 (1984) ("While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.").

Amendment seizure analysis. First, the majority opinion emphasizes that the police car in *O'Malley* was unmarked, whereas the police car here was marked. But the officer in *O'Malley* identified himself as a police officer before asking the driver questions;[18] O'Malley was under no illusion that he was talking to a private citizen. Moreover, the majority opinion offers no reason why an interaction between a law enforcement officer operating out of an unmarked police vehicle is less coercive than an interaction with a law enforcement officer operating out of a marked police vehicle. Caselaw is clear that the simple indication that one is a police officer is not a "show of authority" sufficient to initiate a seizure. Indeed, it is common sense that people are free to go about their business when they encounter police vehicles without their lights on. Regardless, given that the officer in *O'Malley* immediately identified himself, the difference between the markings on the police vehicles in each case is no more probative than the difference between defendant driving a red Chevrolet Cobalt and O'Malley driving a blue Chevrolet Tahoe.

The other purported factual difference emphasized in the majority opinion is that when Deputy Robinson exited his vehicle, "defendant was by the side of his vehicle and facing the patrol car, as if either defendant had just exited and was waiting for the police officer who had followed him into the driveway or defendant was already walking toward the police officer who had just blocked his car into the driveway." The majority contrasts this with *O'Malley* because Deputy Robinson "did not wait until after the civilian vehicle had parked and its occupant had already begun walking around the home before pulling into the driveway and blocking the path of egress." As a preliminary note, this is a dubious

---

[18] *O'Malley*, 652 F3d at 665.

summary of the facts of this case.[19] But even if defendant were standing idle outside his car, it is a distinction without a difference. The fact remains that defendant was outside his parked car and could have chosen to walk into his friend's home instead of talking to the officer. A reasonable person would feel free to walk to the house even after the officer's vehicle was parked in the driveway behind their unoccupied car.[20] Further, as was the case in *O'Malley*, not only would a reasonable person conclude that they were free to leave their vehicle at the time of the alleged seizure, but defendant, in fact, had left it and appeared to be walking away. Finally, the majority suggests that a reasonable person would not walk toward the house because defendant was not the homeowner, but defendant stated that he had stopped at this house to visit a friend.[21] It makes no difference that defendant himself was not the homeowner.

---

[19] Defendant is not visible on the available body-camera footage until Deputy Robinson has stepped out of his vehicle and has taken a couple strides toward defendant. At that point, defendant appears to be around the front bumper of his car and is in midstride as he walks toward Deputy Robinson. This suggests that defendant had been between the house and the car moments before he appears in the video, not standing around waiting for the officer, as the majority suggests.

[20] See *O'Malley*, 652 F3d at 669.

[21] The majority opinion also attempts to inject doubt into a record that is otherwise clear when it muses about "whether defendant was planning to visit with his friend before Robinson began following defendant or if defendant was planning to keep driving" and when it states that the record is not clear "whether defendant had an independent desire to keep moving" after he got out of his vehicle. But the record supports only one conclusion: defendant was there to visit his friend. There is nothing in the record that suggests defendant wanted to leave but could not do so because his car was blocked. If he wanted to leave, he could have said so; if, at that point, the officer prevented defendant from leaving, it would be a seizure, but those are not the facts of this case.

The majority opinion's characterization of parking in a residential driveway—something any social guest would do—as "a show of force" is risible. Defendant was not in his vehicle when the officer arrived, and defendant indicated that he was visiting his friend, not planning to leave. Only one officer was present, and he did not physically touch defendant. The officer did not turn on his emergency lights or siren, he did not draw his gun, and he did not give any orders or commands. The officer's tone was conversational and not harassing or overbearing. Under these circumstances, there is no seizure. The majority opinion's contrary holding will make it nearly impossible for an officer to seek cooperation from a citizen unless the officer can articulate reasonable suspicion of a crime.

II

Assuming for the sake of argument that there was a seizure, the next question would be whether there was " 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law."[22] In numerous cases, the United States Supreme Court has made clear that "[t]he reasonable suspicion inquiry falls considerably short of 51% accuracy, for, as [it] has explained, to be reasonable is not to be perfect."[23] As the majority recognizes, reasonable suspicion sufficient to justify a vehicle stop under the Fourth Amendment may exist even when it "rest[s] on a mistaken understanding of the scope of a legal prohibition" so long as that mistaken understanding is objectively

---

[22] See *Heien v North Carolina*, 574 US 54, 60; 135 S Ct 530; 190 L Ed 2d 475 (2014) (citation omitted).

[23] *Kansas v Glover*, 589 US ___, ___; 140 S Ct 1183, 1188; 206 L Ed 2d 412 (2020) (quotation marks, citations, and brackets omitted).

reasonable.[24]    Thus, any seizure of defendant by Deputy Robinson may have been constitutionally permissible even if defendant did not violate the impeding-traffic statute.

In explaining the "reasonable mistake of law" standard in *Heien*, the United States Supreme Court discussed another case that arose out of this state, *Michigan v DeFillippo*.[25] There, Detroit police officers arrested the defendant under an ordinance that made it illegal for a person suspected of criminal activity "to refuse to identify himself and produce evidence of his identity."[26]    Our Court of Appeals determined that the ordinance was unconstitutional and that the arrest was therefore invalid.[27]    Accordingly, it ordered the suppression of drug evidence that had been discovered incident to the arrest.  The United States Supreme Court accepted the unconstitutionality of the ordinance but reversed the suppression of the drug evidence, holding that the arrest was valid and that the evidence should not have been suppressed.[28]    The Court explained that "there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance."[29]    *Heien* then explained that *DeFillippo* is an example of a valid seizure under the Fourth Amendment based on a reasonable mistake of law.  "That a court only *later* declared the ordinance unconstitutional does not change the

---

[24] *Heien*, 574 US at 60.

[25] *Michigan v DeFillippo*, 443 US 31; 99 S Ct 2627; 61 L Ed 2d 343 (1979).

[26] *Id*. at 33.

[27] *Id*. at 34.

[28] *Id*. at 40.

[29] *Id*. at 37.

fact that DeFillippo's conduct was lawful when the officers observed it. But the officers' assumption that the law was valid was reasonable, and their observations gave them 'abundant probable cause' to arrest DeFillippo."[30]

Although this case presents slightly different circumstances, *Heien*'s discussion of *DeFillippo* is instructive. Deputy Robinson observed two cars stopped next to each other in the middle of Old State Road. Deputy Robinson believed this to be a violation of MCL 257.676b(1), which states, in relevant part, that "a person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular . . . or pedestrian traffic upon a public street or highway . . . ." The majority concludes that defendant did not violate this statute because he did not actually interfere with the movement of any other vehicles or pedestrians. But the officer did not have the benefit of this Court's guidance at the time of the alleged offense. In fact, the only opinion at the time of these events that had interpreted the impeding-traffic statute reached the exact opposite conclusion.[31] In the unpublished *Salters* opinion, a unanimous Court of Appeals panel held that MCL 257.676b(1) "did not require a showing of an actual impediment to the smooth flow of traffic in order to establish a violation of the statute."[32] Thus, the circumstances here are similar to *DeFillippo*; in both cases, there was a law that appeared to be grounds for a valid seizure until those grounds were deemed inapplicable by a subsequent judicial ruling. Here, a statute appeared to apply to defendant's conduct based

---

[30] *Heien*, 574 US at 64 (citations omitted).

[31] *People v Salters*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2001 (Docket No. 215396).

[32] *Id*. at 2.

11

on the only available judicial guidance until this Court repudiated the decision. In *DeFillippo*, an ordinance appeared to apply to the defendant's conduct until the Court of Appeals determined that it was unconstitutional. In both cases, the defendant's conduct was lawful, but the officer's assumption that the defendant's conduct was unlawful was reasonable. Thus, any seizure that occurred in this case was the result of a reasonable mistake of law.

The majority concludes that Justice Kagan's concurring opinion in *Heien* provides persuasive guidance about what constitutes an objectively reasonable mistake.[33] But conspicuously absent from the majority's discussion of Justice Kagan's concurrence is her instruction that "the test [for whether police action is a reasonable mistake of law] is satisfied when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view."[34] In this case, not only *could* a reasonable judge agree with the officer's view, but three seasoned judges of the Court of Appeals, all of whom served as trial judges prior to their service as appellate judges, unanimously agreed with the officer's view.[35] Judges TALBOT, O'CONNELL, and COOPER[36] all concluded that MCL 257.676b(1) did not require a showing of an actual impediment to the smooth flow of

---

[33] It goes without saying that while Justice Kagan's opinion is interesting, a concurring opinion is not binding precedent. As explained earlier, the facts of the instant case support a finding of a reasonable mistake of law pursuant to the majority opinion in *Heien*.

[34] *Heien*, 574 US at 70 (Kagan, J., concurring) (quotation marks and citation omitted).

[35] See *People v Salters*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2001 (Docket No. 215396).

[36] Indeed, at the time *Salters* was decided, these three judges of the Court of Appeals possessed a combined 74 years of judicial experience.

traffic.[37]  Although the decision is unpublished and not binding precedent, it is objective proof that three reasonable judges could—and, in fact, did—agree with Deputy Robinson's understanding of the statute at issue.  It is also worth noting that this Court denied the defendant's application for leave to appeal in *Salters*.[38]  The Court of Appeals' interpretation set out in *Salters* remained unchallenged in Michigan's court system until the present case, more than 20 years after *Salters* was decided.[39]

The majority's implicit holding that *Salters* was so erroneous that no reasonable judge could reach its conclusion sets far too high a bar for the reasonable-mistake-of-law test.  The *Heien* majority explained that "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection."[40]  A proper

---

[37] *Salters*, unpub op at 2.

[38] *People v Salters*, 465 Mich 920 (2001).

[39] The majority opinion misses the point in its discussion of *Salters* being unpublished and not relied on by another appellate decision in Michigan prior to this case.  So what?  This only suggests that no litigant who was issued a citation under MCL 257.676b(1) thought *Salters* was wrong.  The fact that a recent panel of the Court of Appeals disagreed with *Salters* only further undermines the majority's position.  We now have two unpublished Court of Appeals opinions that have interpreted the same statute differently.  This is prima facie proof that reasonable judicial minds can—and, in fact, did—differ over the interpretation of the impeding-traffic statute.  See *Heien*, 574 US at 68 (holding that it was objectively reasonable for the officer to think that the defendant's faulty right brake light violated North Carolina law because there was a disagreement within the state courts on that very issue).  Because Deputy Robinson's interpretation was consistent with that of the only panel of the Court of Appeals to have addressed the question at the time of defendant's arrest, *Heien* dictates that Deputy Robinson's error was a reasonable mistake of law.

[40] *Heien*, 574 US at 60-61 (quotation marks and citation omitted).

13

reasonableness analysis under the Fourth Amendment "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are [often] tense, uncertain, and rapidly evolving[.]"[41] In finding that this mistake was unreasonable, the majority holds police officers to an impossibly high standard: a standard of perfection. Under the majority's ruling, to be reasonable, police officers must be so adept and assured in their own statutory interpretation that they would reject longstanding conclusions by Court of Appeals judges if they anticipate that this Court will one day disagree. This ruling flies in the face of *Heien* and requires perfection—if not omniscience—instead of reasonableness. While the standard of perfection is ideal, it is neither required by our Constitution nor realistic. Deputy Robinson's conduct in this case was not only reasonable, it was exemplary, good police work. He should not be criticized for his conduct; instead, he should be congratulated.

III

Deputy Robinson did not seize defendant when he pulled his patrol vehicle into the driveway, and even if he had seized defendant, the seizure would be valid under the Fourth Amendment because Deputy Robinson made a reasonable mistake of law. For these reasons, I dissent.

Brian K. Zahra
David F. Viviano

---

[41] *Graham v Connor*, 490 US 386, 396-397; 109 S Ct 1865; 104 L Ed 2d 443 (1989) (considering whether an officer's use of force was "reasonable" under the Fourth Amendment). Thus, "[c]ommon sense and everyday life experiences predominate over uncompromising standards." *People v Nelson*, 443 Mich 626, 635-636; 505 NW2d 266 (1993).